**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GILBERT MADORE and
SUZANNE MADORE
        Plaintiffs      : CIVIL ACTION NO.:
                              3 02 CV1519JCH

VS.

TONY BONDI, CYNTHIA WILLIAMS,
TOWN OF HADDAM AND RAY BOGDAN
        Defendants     : December 31, 2003

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the undersigned defendants, Tony Bondi, Cynthia Williams and Town of Haddam, respectfully move this Court for the entry of summary judgment in their favor as to all claims in the plaintiff's Complaint. In support of this motion, the defendants submit the attached Memorandum of Law.

                                        DEFENDANTS TONY BONDI, CYNTHIA
                                        WILLIAMS & TOWN OF HADDAM,

                                        By_____
                                        William J. Melley III
                                        250 Hudson Street
                                        Hartford, CT 06106
                                        phone: (860) 247-9933
                                        fax: (860) 247-9944
                                         Federal Bar No. CT 06355

## *CERTIFICATION*

This is to hereby certify that a copy of the foregoing was mailed this date to:

Norman A. Pattis, Esquire
Williams and Pattis, LLC
55 Elm Street, Suite 409
New Haven, CT 06510

Thomas P. Cella, Esquire
Howard, Kohn, Sprague & FitzGerald
237 Buckingham Street
P. O. Box 261798
Hartford, CT 06106

_____
William J. Melley III

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GILBERT MADORE and
SUZANNE MADORE
         Plaintiffs         : CIVIL ACTION NO.:
                                3 02 CV1519JCH

VS.

TONY BONDI, CYNTHIA WILLIAMS,
TOWN OF HADDAM AND RAY BOGDAN
         Defendants      : December 31, 2003

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      The plaintiff has brought this Complaint in essence alleging that Tony Bondi, the First Selectman for the Town of Haddam, Cynthia Williams, the Zoning Enforcement Officer for the Town of Haddam and the Town denied equal protection of the law to the plaintiffs by conspiring with a private citizen, Ray Bogdan, to deprive them of their equal protection rights and to intentionally inflict emotional distress. The plaintiffs allege that the Town subjected the plaintiffs to the unequal enforcement of zoning and inland wetland regulations. The plaintiff also alleges that the defendant Bondi and Williams selectively enforced inland wetland regulations against them and zoning regulations

against them in January and March of 2002. The defendants have denied the essence of the allegations and set up public defenses towards same.

**FACTS**:

Susan Madore is the owner of property at 109 Nason Road in Higganum, Connecticut for all times relevant to this action. She resides with her boyfriend, Gilbert Madore, who is not listed as an owner of the property, which is about three acres. (Gilbert Madore, Deposition Tr. at 13-14) Harry Everhart was the official for the town with whom he worked. (Gilbert Madore Deposition Tr. at 17) At this point in time, the basement would get five feet of water in it. (Gilbert Madore Deposition Tr. at 17) A swale was put up on the far side of the house so that water would not run through the basement window. (Gilbert Madore Deposition Tr. at 18) A catch basin was put in down at the public roadway. (Gilbert Madore Deposition Tr. at 18) Initially, Mr. Madore was not operating with any plans or a permit, but ultimately he did secure an engineer redesign and the work was done. (Gilbert Madore Deposition Tr. at 20)

On March 18, 2002, the Town of Haddam Planning and Zoning Commission held a meeting. The records from that meeting, which is attached hereto as Exhibit 1, reflects a Mr. Raymond Bogdan did appear at the meeting. The language is as follows:

2

11.     Raymond Bogdan, request to discuss issues on Nason Road, Higganum

Mr. Bogdan appeared with a real estate power of attorney for Joyce Maynard to represent her interests in this matter. He had a complaint about Ms. Maynard's neighbor, Gilbert Madore of 109 Nason Road, who apparently had started a large construction project two weeks ago. He stated that Ms. Maynard owns the entire portion of the brook about 198 feet in a straight line. He is altering the direction of the brook and flattening a portion of his property. Mr. Bogdan noted that this is not the first complaint focusing on Mr. Madore. He said that at his home, Mr. Madore has replaced windows, siding, roof, and roofing on the decks and rebuilt a portion of his chimney without any proof of permits. Presently, Mr. Madore is building a large concrete wall. Mr. Bogdan showed the Commission photographs.

Ms. Williams reported that Mr. Madore is planning to open a home occupation (landscaping business) with the help of land surveyor, Mr. Jacobiak. Mr. Madore is presently in the process of applying for a home occupation permit. Ms. Williams told Mr. Jacobiak that he would need a permit and would have to go before the Commission. She believes that Mr. Madore would eventually build a garage to house the construction equipment that he has parked all over his property right now. There is an oil truck parked close to the brook location, which caused the Commissioners serious concern. Mr. Madore has not applied for any permits and has moved his equipment into the woods and all around his yard.

Chairman Geraghty stated that this activity could not continue without a site plan and permits. He said that more that 25% of the total property seems to be dedicated to the home business. He also reminded the Commissioners that there should be no external evidence of the home occupation except parking (for 2 vehicles). This is obviously not the case

3

in this incidence. There appears to be a violation. The Commission left it
to Ms. Williams to continue to investigate and to issue a Cease and Desist
to Mr. Madore.

As a result of that meeting, Cynthia Williams did issue a Cease and Desist order, a copy of which is attached as Exhibit 2.

Mr. Madore who did have a 450 gallon diesel fuel tank, ultimately sold that diesel tank. (Gilbert Madore deposition transcript at 35) The snow plow truck was moved to his father's place. (Gilbert Madore deposition Tr. at 34) Mr. Gilbert Madore has no personal knowledge as to whether he has been treated differently from the way town officials have dealt with other written complaints or complaints made at meetings. (Gilbert Madore deposition Tr. at 56; Susan Madore deposition Tr. at 11)

II.     **DISCUSSION**:

    A.     **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that she is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the

moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d. Cir. 1994). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 255, and present such evidence that would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2dCir. 2000).

B.      **Argument**:

The plaintiffs claim that the Town of Haddam is liable for the alleged constitutional law of violations of the different officers of the Town. Municipalities are subject to Section 1983 liability where "the execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). The defendants submit that there is no basis for municipal liability within the Complaint. Further, by the testimony of the plaintiffs themselves, there is no evidence that can be offered to create an issue of fact that a municipal policy or custom led to the alleged violation of the Constitutional rights. To prevail, the plaintiff must demonstrate a course deliberately pursued by the municipality

as opposed to an action taking unilaterally by a non-policy making municipal employee and an affirmative link between that police and the particular constitutional violation. Oklahoma City v. Tuttle, 471U.S. 808, 105 S.Ct, 2427, 2533 (1985). A plaintiff must typically point to facts outside his own case to support his allegation of a policy on the part of a municipality. Thurman v. City of Torrington, 595 F.Supp. 1521, 1530 (D. Conn. 1984). There is further no evidence that the Town maintained a practice so consistent and widespread to input constructive knowledge of the practice to policy making officials. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). The plaintiff can do so by showing deliberate indifference which is demonstrated when the "adequacy is so obvious, and ... so likely to result in the violation of constitution rights, that the policy makers can reasonably be said to have been deliberately and different." Warner v. City of Terryhaute, 30 F. Supp. 2d 1107, 1120 (S.D. In. 1988).

III. **Equal Protection Claim**

"The equal protection clause requires that the government treat all similarly situated people alike." Harlen Assocs., 273 F.3d at 499. The United States Supreme Court recently affirmed the viability of an equal protection claim brought by "a class of one village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state such a claim,

the plaintiff must allege that the defendants intentionally treated them differently from others similarly situated and that no rationale basis existed for the difference in treatment. <u>African Trade and Information Center, Inc. v. Abromiatis</u>, 294 F.3d 355, 362 – 63 (2d Cir. 2002). An additional question exists as to whether or not malice or bad faith must also be shown. At a minimum, it would be required to show that the decision was "irrational and wholly arbitrary," in other words that there was "no legitimate reason for its decision." <u>Zeigler v. Town of Kent</u>, 258 F. Supp 2d 49 (D. Conn. 2003). The stronger argument is tempered by the policy of affording governmental decisions as strong presumptions of validity, which means that to the extent a governmental decision should be upheld if there is "any reasonably conceivable state of facts that could provide a rationale basis for the classification." <u>Heller v. Doe</u>, 509 U.S. 312, 319 (1993). In the instant matter, the plaintiff acknowledges that he set about to reconfigure property which affected the flow of water as it arrived onto the public road. Eventually, his actions were reduced to the appropriate engineering mechanism and permits and no further dispute arose. His subsequent actions, involving the use of his property and the storage of a diesel fuel tank as well as operating without proper permits, are all appropriate actions to

7

be taken by a governmental official. The plaintiff can not show any inappropriate conduct on the part of the town officials. Accordingly, the plaintiffs' factual allegations can not stand scrutiny of the tests for an equal protection claim.

Further, as the affidavits show, there is no basis for a conspiracy between the town officials and the private citizen. There is not basis for any allegation of any concerted effort.

IV.    **Conclusion**

Wherefore, for the foregoing reasons, the undersigned defendants respectfully request the court to grant their motion and enter judgment in their favor as to all claims in the plaintiffs' Complaint.

DEFENDANTS TONY BONDI, CYNTHIA WILLIAMS & TOWN OF HADDAM,

By /s/ William J. Melley III
William J. Melley III
250 Hudson Street
Hartford, CT 06106
phone: (860) 247-9933
fax: (860) 247-9944
Federal Bar No. CT 06355

## *CERTIFICATION*

This is to hereby certify that a copy of the foregoing was mailed this date to:

Norman A. Pattis, Esquire
Williams and Pattis, LLC
55 Elm Street, Suite 409
New Haven, CT 06510

Thomas P. Cella, Esquire
Howard, Kohn, Sprague & FitzGerald
237 Buckingham Street
P. O. Box 261798
Hartford, CT 06106

/s/ William J. Melley III
William J. Melley III

9

EXHIBIT "1"
Page 1 of 3

# TOWN OF HADDAM
## PLANNING AND ZONING COMMISSION
## PUBLIC HEARING AND MEETING
## MONDAY, MARCH 18, 2002 AT 7:00 PM
## HADDAM TOWN HALL
## MINUTES

**ATTENDANCE**

| | |
|---|---|
| X | Trevor Davis |
| X | Stasia De Michele |
| A | Mark Dubois, Vice Chairman |
| X | Robert Duval, Secretary |
| X | Paul Geraghty, Chairman |
| A | Malcolm Gorin |
| A | Landon Haase, Alternate |
| X | Stephen Hitchcock |
| A | Arthur Kohs, Alternate |
| X | Geoff Colegrove, Town Planner – Midstate RPA |
| X | Cynthia Williams, Zoning Enforcement Officer (ZEO) |
| X | Ann Riebold, Administrative Assistant |

1. **Call to order**

The meeting was called to order at 7:07 PM.

2. **Attendance – Seating of Alternates**

Attendance was taken. There was a quorum present.

3. **Additions/Corrections to the Agenda**

There were three additions to the Agenda. 11A the Jail Hill Ball Park /Haddam Little League request for modification of a Special permit; 11B Jeff Rummel and Bill Conner for discussion of a lot on Earl Roberts Road; and 11C Chairman Geraghty's request for discussion of Section 7 for a possible regulation change [see attached].

4. **Approval of/Corrections to the March 4, 2002 Meeting's Minutes**

The Minutes were accepted as printed.

5. **Staff Reports**

Staff Reports were deferred until after the Public Hearing. (See #11).

1



EXHIBIT "1"
Page 2 of 3

The main issue tonight is the through road. The Commission noted that there is lot of ledge in this area and each driveway would cause good amount of blasting. A possible option would be a common driveway. Mr. Fairbanks noted that the parcel is very steep in places. He believed that the new proposal would comply with regulations for less than 15% slopes. He thought that the two main considerations at this time were 1) road length, for which the applicant would need a waiver, and 2) whether the plan should be for a through road or for a cul-de-sac concept. The longest point from the intersection of Plains Road and the cul-de-sac is 2,700 feet.

Douglas Reefe spoke in reference to the steep driveway that was mentioned earlier. He said that the driveway cuts onto Old Cart Road in a very steep angle and that that might be a safety issue. He suggested reducing that problem by reducing the number of lots and by making a cul-de-sac. The Commissioners tended to believe that the single through road would cause fewer problems in the long run.

There was discussion of selling lots as the road is completed and improved to Town standards. The lots that could be sold would be frontage lots and not the interior lots until the entire road was completed. Bonding issues were also reviewed.

Fire facilities would be necessary and would probably involve 2-3 tanks due to the length of the road, according to Mr. Colegrove. A fire loop road was suggested as a good idea for further fire safety

Mr. Fairbanks, who had come for comment and feedback to his proposed plan, was going to incorporate the Commissioner's suggestions and continue with the planning stage of the proposal.

11. <u>Raymond Bogdan, request to discuss issues on Nason Road, Higganum</u>

Mr. Bogdan appeared with a real estate power of attorney for Joyce Maynard to represent her interests in this matter. He had a complaint about Ms. Maynard's neighbor, Gilbert Madore of 109 Nason Road, who apparently had started a large construction project two weeks ago. He stated that Ms. Maynard owns the entire portion of the brook about 198 feet in a straight line. He is altering the direction of the brook and flattening a portion of his property. Mr. Bogdan noted that this is not the first complaint focusing on Mr. Madore. He said that at his home, Mr. Madore has replaced windows, siding, roof, and roofing on the decks and rebuilt a portion of his chimney without any proof of permits. Presently, Mr. Madore is building a large concrete wall. Mr. Bogdan showed the Commission photographs.

Ms. Williams reported that Mr. Madore is planning to open a home occupation (landscaping business) with the help of land surveyor, Mr. Jacobiak. Mr. Madore is presently in the process of applying for a home occupation permit. Ms. Williams told Mr. Jacobiak that he would need a permit and would have to go before the Commission. She believes that Mr. Madore would eventually build a garage to house the construction equipment that he has parked all over his property right now. There is an oil truck parked close to the brook location, which caused the Commissioners serious concern. Mr. Madore has not applied for any permits and has moved his equipment into the woods and all around his yard.

5

EXHIBIT "1"
Page 3 of 3

Chairman Geraghty stated that this activity could not continue without a site plan and permits. He said that more than 25% of the total property seems to be dedicated to the home business. He also reminded the Commissioners that there should be no external evidence of the home occupation except parking (for 2 vehicles). This is obviously not the case in this incidence. There appears to be a violation. The Commission left it to Ms. Williams to continue to investigate and to issue a Cease and Desist to Mr. Madore.

11A. <u>Jail Hill Road Ball Park, Modification of Special Permit</u>

Bill Boles, Secretary of the Haddam Little League, Diane Bowe and Brian Roth represented the applicant. Mr. Boles said that they were here to talk about improvements to the new Ball Fields on Jail Hill Road and get the Commission's reaction. There were short term and long term plans. Short term, the Little League would like to construct a temporary structure at the extreme rear of the property. The structure would be used as a storage shed and a concession stand. The Little League was considering an 8-foot by 20-foot trailer or an 8-foot by 12-foot *Carefree* free standing building. There were some issues with the trailer, so the Little League believed the *Carefree* building was the best choice. The building could be set on gravel or rip rap. It was decided that this would need a zoning permit, but not a building permit

Mr. Roth talked about the introduction of electric power on the site that could be used to power the concession stand. He described the activity as a single-phase pole-top construction that would come off of a SNET pole 30-50 overhead [over the road] to a new inland pole inside the fence and go underground via a conduit to the rear of the lot He thought that there would be problems pulling the wire through the swales. There would be 200-amp service on the pedestal (Dave Loguidice had spec'd that portion out). The power would be used for lighting the concession and operating a pitching machine, etc. It would not be adequate to run a pumping station, Mr. Roth said.

Long range, Mr. Boles said that the Little League would like to build a permanent building to replace the temporary structure. The new building would include lavatories, the concession and storage. Mr. Boles noted that eventually the Little League would want to install dugouts on the fields. He asked if the P&Z would want to see a site plan or if administrative review would be enough. He was told that the Commission would have to see the original Special Permit and the conditions imposed in order to answer that question. Chairman Geraghty asked Ms. Riebold to fax him a copy of the Special Permit and conditions. Mr. Boles also asked for a copy of the same and Ms. Riebold said she would fax the information to both.

Ms. Riebold noted that the original plan [the Mylars] was never filed in the land records and reminded the Commission that this had happened under a previous administration.

Mr. Boles noted that the Little League has a time constraint as the opening day is April 20 and they wanted to have the building in place at that time

Mr. Boles said that the Little League would own the temporary building and would then take down that building and own and build the permanent building. He also mentioned that the portable toilets had been ordered. The Commission pointed out that the toilets were not on the application. Mr. Colegrove suggested putting all activities the Little League planned to do this year, and for which it was funded, on one application  The



Town of Haddam

EXHIBIT "2"
Page 1 of 2

\* Certified Mail Return Receipt Requested

# CEASE AND DESIST ORDER

Map: __22__  Lot: __3-3__  Date: __March 29, 2002__

Order Sent To: __Gilbert Madore & Suzanne Dadrio__

Location of Violation: __109 Nason Road__

Property Owner: __Suzanne Dadario__

Mailing Address: __109 Nason Road Higganum, CT 06441__

Said premises owned and occupied by you are in violation of the below referenced Zoning Ordinances and Zoning Regulations in the Town Of Haddam

Pursuant to the authority vested in me by the Town of Haddam and the General Statutes of the State of Connecticut, you are hereby ordered and directed to immediately upon receipt of this letter to discontinue and remedy the violations and conditions at premises identified above.

An investigation of the subject premises by this office on __March 18, 2002__ discloses that the following conditions presently exist:

__The storage of two or more Commercial Vehicles__

__Operating a business out of the home without approval from the Planning and Zoning Commission__

__Operating a Commercial Business in a Residential Zone__

__Installing a Diesel Fuel Tank without a permit from the Zoning Enforcement Officer.__

The above conditions violate the following section(s) of the Town of Haddam Zoning Regulations:

__Section 6.2(c), Section 21.4, and Section 23.2   *See enclosed__

Suggestions for remediation are as follow:

Immediately Cease and Desist any and all Activity upon receipt of this order. Proceed with permitting process

Your immediate attention to this matter is hereby advised and directed.

30 Field Park Drive, Haddam, CT 06438
Phone (860) 345-8531 • Fax (860) 345-3730

EXHIBIT "2"
Page 2 of 2

*[signature: Cynthia Williams]*

**Cynthia Williams**
**Zoning Enforcement Officer**

NOTE: A further inspection will be made of the subject premise 7 days upon receipt of this notice, if compliance is not established, the full penalties prescribed by the law may be invoked. You may consult the Zoning Enforcement Officer, if there are any questions as to the manner and time of establishing compliance.

cc:   Bruno Maurasutti, Town Attorney
      Tony Bondi, First Selectman
      Geoff Colgrove, Town Planner
      Paul Geraghty, Planning & Zoning Chairman
      Mark Stephens, Wetland Chairman
      File

Certified mail # 7000 0600 0026 4447 3403