UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT MADORE and : | |
| SUZANNE MADORE : | |
| : | |
| VS. : | NO. 3:02CV1519(JCH) |
| : | |
| TONY BONDI, : | |
| CYNTHIA WILLIAMS, : | |
| TOWN OF HADDAM and : | |
| RAY BOGDAN : | JANUARY 18, 2004 |

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT

This is an action pursuant to the equal protection clause of the Fourteenth Amendment.[1] It has been brought against a Connecticut municipality, its First Selectman and Zoning Enforcement Officer, and against a private citizen, Ray Bogden, whose power in the town is such that he has commanded the disparate treatment which, in response to his demands, has been inflicted upon the plaintiffs. In their Local Rule 56 Statement, the attachments thereto, and the evidence submitted by defendant Bogdan as well, the plaintiffs have demonstrated substantial evidence that Town regulations were enforced against them, in most instances when the plaintiffs in fact had not violated any such regulations, when as many as thirty other residents of the town were in open and flagrant violation of the same regulations and nothing was done

---

[1] The plaintiffs also have brought against defendant Bogdan a state law claim for the intentional or reckless infliction of emotional distress.

even when the plaintiffs complained. Defendant Bogdan, according to one Town official because of his generous campaign contributions to defendant Biondi, got instant action against the plaintiffs whenever he requested it. He was never required to file written complaints to get such action, although everyone else in town – specifically including the plaintiffs when they complained – was required to complain in writing. Defendant Bogdan could walk unannounced into a meeting of the Haddam Planning and Zoning Commission on March 18, 2002, and demand and get action by the Commission and by defendant Williams without even appearing on the Commission's agenda for the evening and without notice to the plaintiffs. No other person in town could do that. In addition to commanding and orchestrating the campaign of harassment and disparate treatment by Town officials, Bogden became a stalker of the plaintiffs and their five young children, repeatedly trespassing on their property, photographing not only the property but the children as well, terrorizing the children. He also unsuccessfully attempted to enlist state officials in his campaign of terror against the plaintiffs, making blatantly false complaints to both the State Police and the DEP.

On this record, the defendants have followed the uniform pattern of most defendants in civil rights cases. They have moved for summary judgment, claiming that there is no evidence of any wrongdoing on their part despite the deposition testimony and sworn interrogatory answers of the plaintiffs to the contrary.[2]

---

[2] See Kravitz, J., in *Federal Practice Section Newsletter*, Conn. Bar Assn., Winter, 2004, p. 5.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered

by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

The Town of Haddam and its two officials make essentially one claim – that the evidence does not support a conclusion that they violated the equal protection clause. But the plaintiffs' evidence in that regard is very strong.  On the plaintiffs' very road, other property owners keep heavy equipment on their land, in plain view, and have dilapidated buildings and unpermitted construction work going on and no cease and desist orders or other adverse actions are taken by the Town and its officials.  The plaintiffs, however, are subjected to cease and desist orders and other enforcement actions for the very same conduct as their neighbors are allowed to get away with. (Suzanne Madore's deposition transcript, pp. 6-7, 10-12)  Defendant Williams visited the plaintiffs' property more than twenty times on frivolous complaints, doing nothing substantive but making threats and disrupting their lives.  (Id. pp. 16-18, 28-32)  The accusations made by defendant Williams against the plaintiffs were false.  (Id. p. 34) Defendant Williams came out to the plaintiffs' property, inspected, and confirmed that there were no violations; yet still she refused to withdraw her cease and desist order against the plaintiffs, thereby preventing them from making any improvements on their property.  (Gilbert Madore deposition transcript pp. 59-60)  Throughout 2002, defendant Bogdan repeatedly telephoned defendant Biondi to make false accusations against the plaintiff.  Because defendant Bogdan had so much power in the town, defendant Biondi invariably would respond to Bogdan's calls by telephoning the plaintiff and instructing him not to do whatever it was that Bogdan was falsely accusing him of doing.  It was unnecessary for defendant Bogdan to make formal complaints.  He could get immediate action from Town officials just by picking up the telephone.  Defendant

Williams knew these accusations were false but failed to so document that knowledge that Bogdan's false complaints would be ignored. (Id. pp. 39-43) There are at least 30 other people in the Town of Haddam who are openly and flagrantly violating the very same Town regulations that the plaintiffs have been accused of violating, but none of them has been the subject of any adverse Town action. (Gilbert Madore deposition transcript pp. 51-53) After he was the subject of Town action, the plaintiff Gilbert Madore complained to defendant Biondi about these identical violations by other named townspeople, but no action was taken by any Town official. (Ibid.) The plaintiff also made such complaints to defendants Williams and Biondi, who informed him that no action would be taken and that he should put his complaints in writing. Defendant Bogdan, however, did not have to put his complaints in writing and could get action from the Town officials every time he made a telephone call. (Id. pp. 54-55, 119) While every other citizen of the town who has a complaint about regulatory violations is required to put the complaint in writing and, if he wishes to address a municipal board, to get his name and issue put on the board's agenda in advance so the subject of the complaint can have notice, a different procedure applies to defendant Bogdan. He can make oral complaints and get action. He can just show up at a board meeting with no advance notice whatsoever, be permitted to denounce the plaintiffs, and get immediate action on his oral complaints even when those complaints are false and he is known to have a history of making such false complaints. (Id. pp. 63-64, 94-95, 97-100)

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000).  Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918).  Expressly endorsing the concept of equal protection for the so-called "class of one" and emphatically rejecting any idea that motivation is relevant to the equal protection analysis, the court articulated the standard:  "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  120 S. Ct. at 1074.  Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); and Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989).  All that a plaintiff need prove is (1) disparate treatment, (2) lack of a rational basis for the disparity and (3) that the defendants' actions were intentional and not merely negligent. 528 U.S. at 564.

"Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), citing Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

"In <u>Harlen</u>, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." *Ibid*., quoting <u>Harlen</u>, *supra*, at 500. *Cf.*, <u>Barstow v. Shea</u>, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); <u>Oneto v. Town of Hamden</u>, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001); <u>Carpenteria Valley Farms, Ltd. v. County of Santa Barbara</u>, 334 F.3d 796, 802 (9th Cir. 2003).

This case meets the test of *Olech*. The motion for summary judgment by the Town of Haddam and its two officials must be denied.

Defendant Bogdan argues, first, that he was not acting under color of law and therefore should not be liable for any constitutional violations. He claims the Town and its officials acted entirely on their own, merely responding as they would to any citizen's complaints. The evidence, however, shows that Bogdan had unique power in the town. He could get action by a mere telephone call when every other citizen had to complain in writing, even about open and flagrant violations of Town regulations. He could walk into a P & Z meeting unannounced and obtain an instant hearing and instant action, even though not on the agenda. Nobody else in town could do that. Even when Town officials knew that his complaints were false, they acted in response to them. Even when their investigation proved the complaints to be false, still they issued cease and desist orders and would not retract them.

Civilians act "under color of law" when they act in concert with public officials to such an extent that they acquire official status. "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of section 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (ex-wife who obtained a constable's assistance in wrongfully seizing her ex-husband's van acted under color of law). Citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ., 24 F.3d 519, 524 (3d Cir. 1994). Thus, landlords who obtained the assistance of on-duty police officer in evicting tenants were acting under color of law in Howerton v. Gabica, 708 F.2d 380 (9th Cir. 1983). A private citizen who conspired with city building officials to acquire the plaintiff's land by illegal use of the condemnation power acted under color of law and can be liable under Section 1983 for the constitutional violations involved. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003). A private defendant in a legal malpractice suit could be held to be a state actor by acting in concert with the trial judge to "fix" the trial and thereby deprive the plaintiff of due process in the suit. DuBose v. Kelly, 187 F.3d 999 (8th Cir. 1999). Two private parties who allegedly conspired with a prosecutor to rig the evidence presented to a grand jury in order to procure the indictment of an innocent man could be found to have acted under color of law even if the actual role of the prosecutor amounted to no more than non-actionable negligence. Coakley v. Jaffe, 49 F. Supp. 2d 615, 624-25 (S.D.N.Y. 1999) (Rakokff, J.). It is well-established that a private party's conduct may be held attributable to the state and subject to a section

1983 liability when a "symbiotic relationship" exists between the acting party and the state. Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961). "To consider a private employer a state actor for section 1983 purposes, a plaintiff 'must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor.'" Pendleton v. St. Louis County, 178 F.3d 1007, 1011 (8th Cir. 1999), quoting Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993).

In false arrest cases, a civilian complainant whose involvement with the police goes beyond merely filing a complaint and reaches in some manner the level of conspiracy or undue influence shares with the police Section 1983 liability for the arrest. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Wagenmann v. Adams, 829 F.2d 196, 209-11 (1st Cir. 1987); Rubin v. Smith, 817 F. Supp. 987 (D.N.H. 1993). The same rule has been applied in a Fourth Amendment unreasonable search case in which members of the news media actively participated in an illegal search and secretly taped the residents of the property, pursuant to a prior agreement with law enforcement officials who conducted the search. Berger v. Hanlon, 129 F.3d 505, 514-16 (9th Cir. 1997). A private citizen who conspired with city building officials to acquire the plaintiff's land by illegal use of the condemnation power acted under color of law and can be liable under Section 1983 for the constitutional violations involved. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003).

A civil conspiracy can be proved entirely by circumstantial evidence, at least as easily as a criminal one.  Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979); Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283 (9th Cir. 1999); Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980); Rutledge v. Electric Hose & Rubber, 327 F. Supp. 1267, 1273 (C.D. Calif. 1971); Lyle v. Teresi, 327 F. Supp. 683, 684 (D. Minn. 1971).

"Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means.  If it is proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object."  Regina v. Murphy, 8 C. & P. 297, 310 (1837) (Coleridge, J.).  See Pierce v. United States, 252 U.S. 239, 250 (1919).

The leading case on Section 1983 conspiracies remains Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  The plaintiff in that case had participated in a sit-in demonstration to protest the segregation of a public library.  After the police chief told the group that the library had been closed, the group crossed the street to purchase lunch at the defendant's lunch counter.  The plaintiff alleged that a police officer entered the store and observed the integrated group sitting together.  Shortly thereafter, a waitress refused service.  Upon leaving the restaurant, the plaintiff was arrested on a

false charge of vagrancy by the same officer who had observed her at the lunch counter. In support of its summary judgment motion, the defendant presented affidavits of its manager and employees attesting that they had not seen or communicated with any police officer. Reversing the order granting summary judgment, the Supreme Court (Harlan, J.) held that the mere presence of the officer was sufficient to permit an inference of conspiracy. "If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service." 398 U.S. at 155. Conspiracies typically must be proven by inference from such concurrent conduct and proof in that manner is entirely sufficient. Thus, the fact that police officers investigating an automobile accident who permitted the wrongdoers to leave the scene during the investigation without submitting to alcohol testing, combined with their failure to conduct other basic on-site investigative procedures, permitted an inference of a conspiracy between the investigating officers and the drunken drivers to cover up the wrongdoing of the latter in violation of the victims' First Amendment right of access to the courts. Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998).

     Civil conspirators are liable for acts done in furtherance of some purpose of the conspiracy even if they are without knowledge of the specific acts. El Ramo, Inc. v. First National Bank of Nevada, 406 F.2d 1205 (9th Cir.), cert. denied, 396 U.S. 875 (1968). Thus, evidence of a conspiracy between civilians and police offices to carry out unconstitutional activities will be sufficient to impose Section 1983 liability upon the

civilians.  E.g., James v. Sadler, 909 F.2d 834 (5th Cir. 1990); Lewis v. Pearson Foundation, Inc., 908 F.2d 318 (8th Cir. 1990); State of New Mexico ex rel. Candelaria v. City of Albuquerque, 768 F.2d 1207 (10th Cir. 1985).

Clearly there is enough evidence in this case to permit a jury to impose liability upon Bogdan under Section 1983.

Defendant Bogdan also claims that (a) his conduct was not "extreme and outrageous" and that (b) the plaintiffs did not suffer "severe emotional distress" – both essential elements of their state law claim against him.  In fact, the plaintiff Gilbert Madore suffered emotional distress so severe that he was physically ill on many occasions.  (Gilbert Madore deposition transcript, p. 115)  Moreover, Connecticut law is clear that medical evidence is not necessary to support a judgment for emotional distress damages.  The credible testimony of the victim is sufficient.  Berry v. Loiseau, 223 Conn. 786, 811, 614 A.2d 414 (1992); Schanzer v. United Technologies Corp., 120 F. Supp. 2d 200, 217 (D. Conn. 2000).  In Opielowski-Brouwer v. Haddam Hills Academy, 31 Conn. L. Rptr. No. 6, 193 (2002) (Shapiro, J.), the court refused to reduce a jury's award of $260,000 for emotional distress caused by an employer's verbally threatening and abusive conduct during the plaintiff's wrongful termination from employment, in the absence of any medical evidence.  Emotional distress consisting of a loss of joy in the everyday events of life, characterized by no longer singing in the shower, with no professional attention whatsoever, is sufficient not only to establish this element of the tort but to support a substantial six-figure jury award.  DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807 (1991).  "Just as the fact of treatment is

not sufficient to prove the existence of severe emotional distress, the absence of treatment does not preclude proof of severe emotional distress." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) (Underhill, J.) (holding that "memory loss and anxiety...are sufficiently serious that a reasonable jury could find for the plaintiff").

As to Bogdan's conduct, it went far beyond merely conspiring with Town officials to instigate repeated unwarranted investigations of the plaintiffs and the issuance of meritless cease and desist orders. It included false complaints to the State Police and the DEP (Gilbert Madore deposition transcript, pp. 106-08) and literal stalking of the Madore home over a very long period of time, to the extent of repeatedly trespassing on their land to take photographs, the use of telephoto lenses on his cameras for the same purpose, and skulking through the woods behind their house to photograph and terrify their little children. (2/4/03 Interrogatory Responses of Suzanne Madore, ¶¶ 6, 7, 9, 11; Suzanne Madore's deposition transcript, pp. 17-20; Gilbert Madore deposition transcript, pp. 83-84, 91-92, 113) Activity of this kind has been held specifically to constitute the very kind of "extreme and outrageous" conduct necessary for liability. Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn. L. Rptr. No. 10, 312 (1995). In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme

and outrageous to support a jury verdict in the member's favor. Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996). See also Anderson v. Drapp, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law. *See also* Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.) (allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment). The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law. Ultimately, it is a community standards test that applies. For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society. In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury. Faraclas v. Botwick, 32 Conn. L. Rptr. No. 11, 414 (2002). Often, it is not the discrete, individual acts that rise to the level of extreme and outrageous conduct, but the pattern

of such discrete acts that does so.  *E.g.,* <u>Davignon v. Clemmey</u>, 322 F.3d 1, 6-7 (1st Cir. 2003) ("a long and relentless campaign of harassment and intimidation").

Defendant Bogdan's motion for summary judgment also must be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiffs' Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Thomas P. Cella, Esq., Howard, Kohn, Sprague & FitzGerald, 237 Buckingham Street, Hartford, CT 06106; and William J. Melley, III, Esq., Kenny, Brimmer, Melley & Mahoney, 5 Grand Street, Hartford, CT 06106.

_____
JOHN R. WILLIAMS