United States District Court
District of Connecticut
FILED AT

3/8/05
Kevin F. Rowe, Clerk

M. Ruocco

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT MADORE and<br>SUZANNE MADORE | :<br>:<br>: |
| VS. | :   NO. 3:02CV1519(EBB)<br>: |
| TONY BONDI,<br>CYNTHIA WILLIAMS,<br>TOWN OF HADDAM and<br>RAY BOGDAN | :<br>:<br>:<br>:   MARCH 8, 2005 |

**PLAINTIFFS' REQUESTS TO CHARGE**

The plaintiffs respectfully request the Court to charge the jury as follows:

1. The plaintiffs have brought this lawsuit to obtain redress for what they contend were violations of their rights under the United States Constitution, specifically their right to equal protection of the laws. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his or her constitutional rights. "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, town officials or a municipality itself; or, in the case of the defendant Bogdan, a private citizen acting in such a close relationship with town officials

1

that his actions may fairly be considered to be jointly undertaken with the actions of the town officials. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

    2. It is not necessary to find that the defendants had any specific intent to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs. The plaintiffs are entitled to relief if the defendants, or any of them, intended the actions which resulted in the violation of the plaintiffs' rights or if the defendants, or any of them, acted in reckless disregard of the plaintiffs' rights. Reckless disregard of the plaintiffs' rights simply means not caring whether or not those rights were being violated. [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

    3. If you find that a defendant is liable to either plaintiff on any of the grounds advanced in this lawsuit, you should then consider the question of damages. There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages. Compensatory

damages are designed to compensate the plaintiff for injuries suffered by the plaintiff. These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering. In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendant. Among the elements of injury and harm for which compensation may be awarded are:

    a) The physical harm to the plaintiff during and after the impairment or injury received, including imprisonment and loss of freedom;

    b) The emotional harm to the plaintiff during and after the impairment or injury received, including emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to suffer in the future;

    c) Lost wages or earnings;

    d) Attorney fees or other expenses and costs of legal representation;

    e) Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred. Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages in such a case to the extent

that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you. [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

    4. You may also decide whether the plaintiffs are entitled to the award of any punitive damages. In a case like this one, you may consider whether acts or omissions of any individual defendant, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct. Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

    1) Willful or malicious violation of the constitutional rights of the plaintiff;

4

2) Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

3) Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages. [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

5. The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community. In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case. These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case. [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v.

5

Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

6. When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another. Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages. All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one. [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

7. Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully. When a defendant voluntarily and intentionally

offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of wrongdoing. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury. A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976); Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-21 (1896); United States v. DeAlesandro, 361 F.2d 694, 697-98 (2d Cir. 1966), cert. denied, 385 U.S. 842 (1967).]

8. A supervisory official may be held liable for a violation of a plaintiff's rights if his or her own conduct was a proximate cause of the violation. A

7

supervisory official subjects a person to a violation of his or her constitutional rights if he (1) does an affirmative act, or (2) participates or acquiesces in another's affirmative act, or (3) omits to do something which he is required to do, and that act or omission causes the violation of which the plaintiffs have complained. Personal participation in the immediate act which violated the plaintiff's rights is not required. It is sufficient if the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, which he knows or reasonably should know would cause others to inflict the constitutional injury. [Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978); McClelland v. Facteau, 610 F.2d 693 (10th Cir. 1979); Sims v. Adams, 537 F.2d 829 (5th Cir. 1976).]

9. The federal constitutional issue in this case is whether the defendants violated the plaintiffs' right to equal protection of the laws under the federal constitution. The equal protection clause of the fourteenth amendment requires that all persons similarly situated must be treated alike by the government and by government officials. Selective or different enforcement of otherwise constitutional laws on the basis of unreasonable or prohibited distinctions violates the right to equal protection if that selective or different enforcement is intentional and without any rational basis. If you find that any defendant subjected either plaintiff to different or selective enforcement or application of the

8

law, and if you further find that different or selective enforcement was intentional and irrational, then you must return a verdict in favor of the plaintiffs on their equal protection claim. [Village of Willowbrook v. Olech, 528 U.S. 562 (2000); LeClaire v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980); Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996); LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587 (2d Cir. 1994); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir. 1994); FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992).]

10. The plaintiffs contend not only that their constitutional rights were violated, but that these violations were caused by the policy of the defendant Town of Haddam. They contend that the Town should be held responsible for their injuries. In order to establish municipal liability, a plaintiff must show that the violation of his or her constitutional rights resulted from a municipal custom or policy. This rule does not mean that the plaintiffs must show that the municipality had an explicitly stated rule or regulation that caused the constitutional violation. Indeed, even the existence of an explicit municipal policy prohibiting the alleged conduct does not necessarily mean that the constitutional violation alleged was not caused by a municipal policy. The existence of municipal policy can be established by circumstantial evidence or by the fact that the unconstitutional conduct, if it took place, was perpetrated or permitted by the

9

highest policy-setting official of the municipality. The inference that a policy existed may be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights. [DeCarlo v. Fry, 141 F.3d 57, 61-62 (2nd Cir. 1998), quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122-23 (2nd Cir. 1991). Cf., Thomas v. Roach, 165 F.3d 137, 145 (2nd Cir. 1999).]

11. A plaintiff seeking to establish a section 1983 claim against a municipality may do so on a 'ratification' theory by establishing that a municipal official with final policymaking authority approved a subordinate's action and the basis for it. When a policymaker becomes aware of an ongoing unconstitutional act and does not exercise his power to stop that act, his inaction is the same as an affirmative action violating those rights. A decision by municipal policymakers on a single occasion may result in municipal liability under 42 U.S.C. § 1983 for actions they officially sanctioned or ordered. [Dixon v. Lowery, 302 F.3d 857, 867 (8th Cir. 2002); Williams v. Butler, 863 F.2d 1398, 1401 (8th Cir. 1988); Baskin v. City of Des Plaines, 138 F.3d 701, 705 (7th Cir. 1998). Citing Kernats v. O'Sullivan, 35 F.3d 1171, 1182 (7th Cir. 1994); Wilson v. City of Chicago, 6

F.3d 1233, 1240 (7th Cir. 1993); Cygnar v. City of Chicago, 865 F.2d 827, 847 (7th Cir. 1989).]

12. There are three ways to establish that an unconstitutional action resulted from the policy or custom of the municipality and that the municipality itself is liable for that action: First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. [Jett v. Dalls Indep. Sch. Dist., 491 U.S. 701, 737 (1989); Hopper v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001), quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).]

13. The defendant Bogdan is a private citizen, whom the plaintiffs contend acted so much in concert with the other defendants that he was acting under color of law even though he was not a town employee or official. Civilians act "under color of law" when they act in concert with public officials to such an

11

extent that they acquire official status. Although not an agent of the government, a private party who willfully participates in a joint conspiracy with public officials to deprive a person of a constitutional right acts 'under color of law' for purposes of section 1983 liability. It is well-established that a private party's conduct may be held attributable to the government and subject to a section 1983 liability when a "symbiotic relationship" exists between the acting party and the government. To consider a private party a government actor for section 1983 purposes, a plaintiff must show that there was a mutual understanding, or a meeting of the minds, between the private party and the government actor. [Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961); McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ., 24 F.3d 519, 524 (3d Cir. 1994); Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998); Howerton v. Gabica, 708 F.2d 380 (9th Cir. 1983); Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003); DuBose v. Kelly, 187 F.3d 999 (8th Cir. 1999); Pendleton v. St. Louis County, 178 F.3d 1007, 1011 (8th Cir. 1999); Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993); Coakley v. Jaffe, 49 F. Supp. 2d 615, 624-25 (S.D.N.Y. 1999) (Rakokff, J.).]

14. In addition to their claim under federal law, the plaintiffs also have presented against the defendant Bogdan only a state law claim in this suit. The plaintiffs contend that the defendant Bogdan intentionally inflicted severe

12

emotional distress upon them in violation of Connecticut law.  Under Connecticut law, when a person engages in conduct which involves an unreasonable risk of causing emotional distress to another and that emotional distress is of a kind which, if caused, might adversely affect the plaintiff in a serious way, and the plaintiff actually has suffered such emotional injury, then the plaintiff is entitled to recover any damages which you determine are fair and just to compensate for the emotional distress she has suffered.  It is not necessary for there to be any physical injury in order for the plaintiff to recover.  All that is necessary is that the conduct of the defendant have been outrageous, that it have been undertaken under such circumstances that a reasonable person would have known that it was likely to cause emotional distress, and that severe emotional distress actually has resulted.  If you find these facts to have been proven, then the defendant Bogdan should be found liable to the plaintiffs for the intentional infliction of emotional distress under Connecticut state law. [Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003); Buckam v. People Express, Inc., 205 Conn. 166, 173 (1987); Murray v. Bridgeport Hospital, 40 Conn.Sup. 56 (Conn.Super. 1984); Buckley v. Lovallo, 2 Conn. App. 579 (1984); Petyan v. Ellis, 200 Conn. 243 (1986).]

THE PLAINTIFFS

BY: *[signature]*
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Their Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were delivered to Thomas P. Cella, Esq., Howard, Kohn, Sprague & FitzGerald, 237 Buckingham Street, Hartford, CT 06106; and William J. Melley, III, Esq., Kenny, Brimmer, Melley & Mahoney, 250 Hudson Street, Hartford, CT 06106.

*[signature]*
JOHN R. WILLIAMS

14